IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

AFSTAR FINANCIAL SERVICES, FLC, et al.,

                Plaintiff,               Case No. 3:09 CV 2237

-vs-

                                              MEMORANDUM OPINION
HOPEWELL DAIRY, LLC, et al.,               AND JUDGMENT

                Defendant.

KATZ, J.

### BACKGROUND

This matter is before the Court on Plaintiffs' AgStar Financial Services, FLCA ("FLCA") and AgStar Financial Services, PCA ("PCA," and together with FLCA, the "AgStar Entities") *Complaint for Breach of Contract, Foreclosure, Replevin and Other Relief* (the "Complaint"), the AgStar Entities' unopposed *Motion for Partial Summary Judgment* (the "Motion"), the *Affidavit of Dan Godfrey in Support of Plaintiffs' Motion for Partial Summary Judgment* (the "Godfrey Affidavit"), the *Declaration of Jana Hessmeyer in Support of Plaintiffs' Motion for Partial Summary Judgment* (the "Hessmeyer Declaration"), and the evidence submitted therewith. Also before the Court are the AgStar Entities' response to the Court's April 4, 2011, Show Cause Order.

On April 4, 2011 the Court ordered Plaintiffs AgStar Financial Services, FLCA and AgStar Financial Services, PCA ("Plaintiffs") to describe why this case should not be stayed due to the bankruptcy of Defendants Hopewell Dairy Leasing, LLC and Chesterfield Dairy, LLC. Doc. 260. On April 15, 2011, Plaintiffs filed notice with the Court that those bankruptcies had been dismissed on September 14, 2010. Doc. 261. The Court recognizes that copies of these dismissals were attached to Motions to Distribute sale proceeds from the Hopewell and

Chesterfield Receiverships. Docs. 234 Ex. A and 235 Ex. A. Further, the Court recognizes that it erred in its interpretation of the lifts of the bankruptcy stays as to those Defendants (Doc. 217 Exs. A and C) and that the stays were completely lifted. Plaintiffs moved for summary judgment on October 5, 2010. Doc. 240. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed. 2d 202 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## DETERMINATION

Upon consideration of the pleadings and memoranda in support, the Court makes the following determinations:

1.	All necessary parties defendant have been served with the Complaint and summons according to law or have waived service by affirmative action, and all parties are properly before the Court.

2.	All necessary parties have either answered the Complaint, or the AgStar Entities are entitled to have judgment entered against them by virtue of their failure to answer the Complaint.

3.	There exists no genuine issue of material fact and the AgStar Entities are entitled to judgment as a matter of law, as set forth herein, on their First, Second, Fourth, Fifth, and Seventh Claims for Relief as set forth in the Complaint.

4.	There exists no genuine issue of material fact and FLCA, as the assignee and a successor-in-interest to DeLaval, is entitled to judgment as a matter of law, as set forth herein, on Counts One (in part), Two, Three, Four, Five, Eight, Ten and Fourteen of DeLaval, Inc.'s *Amended Cross-Claim Against Midwest Dairy Investments, Hopewell Dairy, LLC and Hopewell Dairy Leasing, LLC and Counterclaim* (the "Cross-Claim"). [Doc. 152.]

5.	There is currently due and owing to Defendant Treasurer real estate taxes as shown on the Treasurer's tax records, the exact amount being unascertainable at the present time, but which amount will be ascertainable by the time of the sale of the Mortgaged Premises[1], which taxes constitute valid and subsisting liens thereon for that amount due and owing.

6.	On or about May 23, 2006, for good and valuable consideration, Hopewell Leasing and Midwest executed and delivered to FLCA the FLCA Note in the principal amount of $7,790,000.00, in which Hopewell Leasing and Midwest agreed to be jointly and severally

---

[1] All capitalized terms not herein defined shall have the same meaning as set forth in the Motion.

4

liable on the full amount due under the FLCA Note, together with interest on the unpaid balance until paid in full.

7. On or about June 20, 2006, for good and valuable consideration, Hopewell Dairy executed and delivered to PCA the PCA Note in the principal amount of $3,430,000.00, in which Hopewell Dairy agreed to repay the full amount due under the PCA Note, together with interest on the unpaid balance until paid in full.

8. On or about May 23, 2006, in order to secure payment of the obligations evidenced by the FLCA Note, Hopewell Leasing executed and delivered to FLCA the FLCA Mortgage, securing the Mortgaged Premises, as more specifically described in the FLCA Mortgage, included in the Appendix at Tab E. More specifically, the Mortgage conveyed Hopewell Leasing's interest in the following:

> SEE LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT 1 AND
> INCORPORATED HEREIN BY REFERENCE.

9. The FLCA Mortgage was recorded on May 30, 2006 with the Mercer County Recorder as Instrument No. 200600003185.

10. Applying the doctrine of *lis pendens*, the effective date of recordation of FLCA's Mortgage is May 30, 2006, and that any and all persons who obtained liens on the Mortgaged Premises subsequent to May 30, 2006, whether known or unknown, have received effective and sufficient notice of the foregoing action and, accordingly, any such lienholders shall have their interests foreclosed and are bound by this decree.

11. To further secure the payment of the obligations evidenced by the FLCA Note, on May 23, 2006, Hopewell Leasing executed and delivered to FLCA the Easement. The Easement

was recorded on May 30, 2006 with the Mercer County Recorder as Instrument No. 200600003186.

12. To further secure the payment of the obligations evidenced by the FLCA Note, Vreba-Hoff executed and delivered to FLCA the VHDD Guaranty, in which Vreba-Hoff agreed, among other things, to be liable to FLCA for an amount the greater of Five Million and 00/100 Dollars ($5,000,000.00) or "an amount equal to one year's interest on all then-existing Program Loans" as defined in the VHDD Guaranty, including the loan evidenced by the FLCA Note.

13. To further secure the amounts due and owing under the PCA Note, on or about June 20, 2006 and July 9, 2008, Hopewell Dairy executed and delivered to PCA the AgStar Security Agreements, securing the amounts due and owing under the PCA Note, and granting PCA a security interest in the Hopewell Dairy Collateral, as described more fully in the AgStar Security Agreements.

14. Pursuant to the AgStar Security Agreements, PCA perfected its security interest in the Property by filing UCC-1 Financing Statements on August 14, 2006 and July 21, 2008 with the Ohio Secretary of State as File Nos. OH00105506634 and 20082040326.

15. On or about May 1, 2007, Vreba-Hoff and AgStar Financial Services, ACA (on behalf of its subsidiaries PCA and FLCA) entered into the Intercreditor Agreement regarding Vreba-Hoff's junior loan to Hopewell Dairy and the subordination thereof to the AgStar Entities.

16. The AgStar Notes are in default, and are currently due and payable. The FLCA Note is in default for failure of Hopewell Leasing and Midwest Dairy to make monthly payments due and owing since March 1, 2009. The PCA Note is in default because it matured on July 1, 2009 and remains unpaid. Furthermore, each of the AgStar Notes provides that it is an additional

Event of Default if any of the other AgStar Notes become in default.

17. The various defaults under the AgStar Notes have already been acknowledged by the Hopewell Borrowers and Vreba-Hoff. On or about September 9, 2009, the Hopewell Borrowers and Vreba-Hoff entered into the Pre-Negotiation Agreement with the AgStar Entities, in which they: identified the AgStar Loan Documents; acknowledged and agreed that the AgStar Notes and related AgStar Loan Documents were duly executed and delivered by each of the Hopewell Borrowers and/or Vreba-Hoff; acknowledged and agreed that the AgStar Notes and related AgStar Loan Documents remained in full force and effect; acknowledged and agreed that each were in default under the AgStar Notes and to the nature of the defaults by each under the AgStar Notes; agreed to the amounts due and owing under each of the Notes as of August 31, 2009; acknowledged and affirmed their obligations under the AgStar Notes; and unequivocally waived any right to trial by jury.

18. As a result, there exists no genuine issue of material fact as to the AgStar Entities' right to relief under the AgStar Notes and other AgStar Loan Documents.

19. As of July 31, 2010, there was justly due and owing to FLCA pursuant to the FLCA Note an amount not less than $8,592,037.04 (including principal in the amount of $7,790,000.00, accrued and unpaid interest, including interest in the amount of $568,845.88, and default interest in the amount of $233,191.16), plus: (I) all costs and charges incurred in the collection or enforcement of the FLCA Note, including attorneys' fees and court costs; (ii) continuing and accruing interest from July 31, 2010 at the per annum rate of 7.5463%; and (iii) all other amounts and charges due and owing under the FLCA Note (the "FLCA Loan Balance").

20. As of July 31, 2010, there was justly due and owing to PCA pursuant to the PCA

7

Note an amount not less than $1,783,790.08 (including principal in the amount of $1,522,389.27, accrued and unpaid interest, including interest in the amount of $185,054.32 and default interest in the amount of $76,346.49), plus: (I) all costs and charges incurred in the collection or enforcement of the PCA Note, including attorneys' fees and court costs; (ii) continuing and accruing interest from July 31, 2010 at the per annum rate of 7.5463%; and (iii) all other amounts and charges due and owing under the PCA Note ("PCA Loan Balance," and together with the FLCA Loan Balance, the "AgStar Notes Balance").

21. FLCA is entitled to judgment against Vreba-Hoff in the amount of $5,000,000 pursuant to the VHDD Guaranty, plus any and all attorneys' fees and expenses incurred in the enforcement of the VHDD Guaranty, as provided for therein.

22. The AgStar Entities have additionally incurred legal fees by the law firm of Hahn Loeser & Parks, LLP (the "Fees"), as well as title costs incurred by Chicago Title Insurance Company (the "Title Costs," and together with the Fees and the AgStar Notes Balance, the "AgStar Loan Balance"). The AgStar Entities may petition this Court at a later date as to the full amounts due and owing for the Fees and Title Costs, both of which are recoverable from Defendants under the AgStar Loan Documents.

23. The conditions in the FLCA Mortgage have been broken by, among other reasons, Hopewell Leasing's and Midwest's failure to make all payments due under the FLCA Note. Therefore, FLCA is entitled to have the equity of redemption of all Defendants in and to the Mortgaged Premises foreclosed.

24. The AgStar Entities are entitled to an order of permanent possession over the AgStar Collateral.

25. On or about July 17, 2007, Midwest, for good and valuable consideration, executed and delivered to DeLaval the EFPA.

26. Pursuant to the EFPA, DeLaval provided loans to Midwest and the dairy leasing facilities for the purpose of conveying services and equipment to Midwest and the dairy leasing facilities.

27. In order to further secure that portion of the EFPA which covered the Mortgaged Premises, on September 4, 2007, for good and valuable consideration, Midwest executed and delivered to DeLaval the Hopewell DeLaval Note in the principal amount of $858,979.00.

28. To further secure payment of the Hopewell DeLaval Note, on September 4, 2007, for good and valuable consideration, Hopewell Leasing executed and delivered to DeLaval the Hopewell DeLaval Guaranty whereby Hopewell Leasing guaranteed payment and performance of the EFPA and the Hopewell DeLaval Note.

29. The EFPA also covered loans made to several other dairy leasing entities: Van Ham Dairy Leasing, LLC ("Van Ham Leasing"), Springfield Dairy Leasing, LLC ("Springfield Leasing"), and Oolman Dairy Leasing, LLC ("Oolman Leasing"). On July 17, 2007, for good and valuable consideration, Midwest executed and delivered to DeLaval the Van Ham DeLaval Note in the principal amount of $924,576.00. On or about February 29, 2008, to further secure payment of that portion of the EFPA which covers the loan made to Springfield Dairy Leasing, LLC, Midwest executed and delivered to DeLaval the Springfield DeLaval Note in the principal amount of $510,000. And finally, on or about January 13, 2009, in order to further secure payment of that portion of the EFPA which covers the loan made to Oolman Dairy Leasing, LLC, Midwest executed and delivered to DeLaval the Oolman DeLaval Note in the

9

principal amount of $1,037,036.

30. In order to further secure the amounts due and owing under the Hopewell DeLaval Note, on or about September 4, 2007, Hopewell Leasing executed and delivered to DeLaval the DeLaval Mortgage, securing the amounts due and owing under the Hopewell DeLaval Note, and granting DeLaval a security interest in the Mortgaged Premises and certain fixtures thereon, as described more fully in the DeLaval Mortgage.

31. The DeLaval Mortgage was recorded with the Mercer County Recorder on November 19, 2007, and later on October 29, 2008, as Instrument Nos. 200700006978 and 200800006012, respectively.

32. In order to further secure the amounts due and owing under the Hopewell DeLaval Note, on or about September 4, 2007, Midwest and Hopewell Leasing executed and delivered to DeLaval the DeLaval Security Agreement, further securing the amounts due and owing under the Hopewell DeLaval Note and granting DeLaval a security interest in the DeLaval Collateral as described more fully in the DeLaval Security Agreement.

33. DeLaval perfected its security interest in the DeLaval Collateral by filing the DeLaval Financing Statements on October 29, 2009 with the Ohio Secretary of State as File Nos. OH00120617294 and OH00120617305, respectively, in favor of DeLaval and against Midwest and Hopewell Leasing.

34. Pursuant to the Settlement Agreement, DeLaval assigned to FLCA, among other things: (a) DeLaval's claims and rights against Hopewell Leasing, including all rights arising under the Hopewell DeLaval Note, Hopewell DeLaval Guaranty and related loan documents; (b) DeLaval's claims and rights against Midwest, to the extent that such claims and rights arise from

10

or are related to the Mortgaged Premises or to Oolman Leasing, Van Ham Leasing, Springfield Leasing, and Hopewell Leasing; ©) DeLaval's liens and security interests in the DeLaval Collateral; and (d) all of its liens and related to the Mortgaged Premises. Thus, FLCA is the proper party in interest to obtain judgment on the Assigned DeLaval Counts.

35. The DeLaval Loan Documents are in default for failure of Midwest and Hopewell Leasing to make all payments when due and owing since July 4, 2009.

36. As of June 29, 2010, there was justly due and owing to DeLaval pursuant to the Oolman DeLaval Note the principal amount of not less $1,037,076, plus: (I) all costs and charges incurred in the collection or enforcement of the Oolman DeLaval Note, including attorneys' fees and court costs; (ii) continuing and accruing interest at the per annum rate of 3.75% from July 4, 2009 to the present; and (iii) all other amounts and charges due and owing under the Oolman DeLaval Note (the "Oolman DeLaval Loan Balance").

37. As of June 29, 2010, there was justly due and owing to DeLaval pursuant to the Van Ham DeLaval Note the principal amount of not less $856,838.11, plus: (I) all costs and charges incurred in the collection or enforcement of the Van Ham DeLaval Note, including attorneys' fees and court costs; (ii) continuing and accruing interest at the per annum rate of 3.75% from July 4, 2009 to the present; and (iii) all other amounts and charges due and owing under the Van Ham DeLaval Note (the "Van Ham DeLaval Loan Balance").

38. As of June 29, 2010, there was justly due and owing to DeLaval pursuant to the Springfield DeLaval Note the principal amount of not less $393,375.71, plus: (I) all costs and charges incurred in the collection or enforcement of the Springfield DeLaval Note, including attorneys' fees and court costs; (ii) continuing and accruing interest at the per annum rate of

11

3.75% from July 4, 2009 to the present; and (iii) all other amounts and charges due and owing under the Springfield DeLaval Note (the "Springfield DeLaval Loan Balance").

39. As of June 29, 2010, there was justly due and owing to DeLaval pursuant to the Hopewell DeLaval Note the principal amount of not less $579,472.92, plus: (I) all costs and charges incurred in the collection or enforcement of the Hopewell DeLaval Note, including attorneys' fees and court costs; (ii) continuing and accruing interest at the per annum rate of 3.00% from July 4, 2009; and (iii) all other amounts and charges due and owing under the Hopewell DeLaval Note (the "Hopewell DeLaval Loan Balance," and together with the Van Ham DeLaval Note Balance, the Oolman DeLaval Note Balance, and the Springfield DeLaval Note Balance, the "Dairy Notes Balance"). Pursuant to the DeLaval Loan Documents, Midwest and Hopewell Leasing are jointly and severally liable for the Hopewell DeLaval Loan Balance.

40. FLCA is entitled to permanent possession of the DeLaval Collateral.

41. The Court further finds that there is no just reason for delay in entering final judgment in favor of the AgStar Entities on the claims identified herein.

### SHOW CAUSE ORDER OF APRIL 4, 2011

Also on April 4, 2011, the Court ordered RAM Separation Equipment Company, LLC ("RAM") and Farm Credit Services of Mid-America, PCA ("Farm Credit") to show cause why they should not be dismissed from this suit. Plaintiffs oppose RAM's dismissal because the Court has granted them judgment on their claims against RAM's interest in the Chesterfield real property. Doc. 261 at 4. However, Plaintiffs already have a judgment against RAM. Doc. 185. Further, claims arising from the DeLaval cross-claim yet remain, preventing the Court from

12

closing the case. Because neither RAM nor Farm Credit responded to the Court's order, both are hereby dismissed along with any residual cross-claims they may have.

## JUDGMENT ENTRY

It is therefore ORDERED, ADJUDGED, AND DECREED that Plaintiffs' motion for summary judgment (Doc. No. 240) is granted.

FURTHER ORDERED that the equity of redemption of all Defendants in and to the Mortgaged Premises shall be foreclosed, and the Mortgaged Premises sold.

FURTHER ORDERED that judgment be entered in favor of FLCA and against Hopewell Leasing and Midwest, jointly and severally, in the full amount of not less than $8,592,037.04 (including principal in the amount of $7,790,000.00, accrued and unpaid interest, including interest in the amount of $568,845.88, and default interest in the amount of $233,191.16), plus: (I) all costs and charges incurred in the collection or enforcement of the FLCA Note, including attorneys' fees and court costs; (ii) continuing and accruing interest from July 31, 2010 at the per annum rate of 7.5463%; and (iii) all other amounts and charges due and owing under the FLCA Note.

FURTHER ORDERED that judgment be entered in favor of PCA and against Hopewell Dairy in the amount of not less than $2,212,192.10 (including principal in the amount of $1,783,790.08 (including principal in the amount of $1,522,389.27, accrued and unpaid interest, including interest in the amount of $185,054.32 and default interest in the amount of $76,346.49), plus: (I) all costs and charges incurred in the collection or enforcement of the PCA Note, including attorneys' fees and court costs; (ii) continuing and accruing interest from July 31, 2010 at the per

13

annum rate of 7.5463%; and (iii) all other amounts and charges due and owing under the PCA Note.

FURTHER ORDERED that judgment be entered in favor of FLCA and against Vreba-Hoff in the amount of $5,000,000, along with post-judgment interest at the statutory rate and any and all attorneys' fees and expenses as provided for in the VHDD Guaranty, for which FLCA may petition the Court at a later date as to the exact amount.

FURTHER ORDERED that judgment be entered in favor of FLCA and against Midwest for the Oolman DeLaval Loan Balance in the full amount of $1,037,076, plus: (I) all costs and charges incurred in the collection or enforcement of the Oolman DeLaval Note, including attorneys' fees and court costs; (ii) continuing and accruing interest at the per annum rate of 3.75% from July 4, 2009 to the present; and (iii) all other amounts and charges due and owing under the Oolman DeLaval Note.

FURTHER ORDERED that judgment be entered in favor of FLCA and against Midwest for the Springfield DeLaval Note Balance in the full amount of the principal amount of not less $393,375.71, plus: (I) all costs and charges incurred in the collection or enforcement of the Springfield DeLaval Note, including attorneys' fees and court costs; (ii) continuing and accruing interest at the per annum rate of 3.75% from July 4, 2009 to the present; and (iii) all other amounts and charges due and owing under the Springfield DeLaval Note.

FURTHER ORDERED that judgment be entered in favor of FLCA and against Midwest and Hopewell Leasing, jointly and severally, on the Hopewell DeLaval Loan Balance in the principal amount of not less $579,472.92, plus: (I) all costs and charges incurred in the collection or enforcement of the Hopewell DeLaval Note, including attorneys' fees and court costs; (ii)

14

continuing and accruing interest at the per annum rate of 3.00% from July 4, 2009; and (iii) all other amounts and charges due and owing under the Hopewell DeLaval Note.

FURTHER ORDERED that judgment be entered in favor of FLCA and against Midwest in the full amount of the Van Ham DeLaval Loan Balance of $856,838.11, plus: (I) all costs and charges incurred in the collection or enforcement of the Van Ham DeLaval Note, including attorneys' fees and court costs; (ii) continuing and accruing interest at the per annum rate of 3.75% from July 4, 2009 to the present; and (iii) all other amounts and charges due and owing under the Van Ham DeLaval Note.

FURTHER ORDERED that the proceeds of said sale of the Property be distributed as follows:

**First:** To the Mercer County Treasurer, for the balance of the unpaid real estate taxes, assessments, interest and penalties, if any, due and payable on the Mortgaged Premises;

**Second:** To the AgStar Entities, the sum of the AgStar Loan Balance and the Dairy Notes Balance, plus post-judgment interest, expenses, and title costs, which amounts are unascertainable at this time but will be ascertainable at the time of the sale; and

**Third:** The balance, if any, to be held by such party designated by this Court pending further order of this Court.

FURTHER ORDERED that, in the event that the AgStar Entities are the successful bidder at any sale of the Property, the amount of the deposits made herein by the AgStar Entities and the

costs of any such sale shall be deducted from the total amount of Court costs otherwise payable herein.

FURTHER ORDERED that the AgStar Entities are entitled to a permanent order of possession over the AgStar Collateral and the DeLaval Collateral.

FURTHER ORDERED that the AgStar Entities retain the right to, and may at their sole option, credit bid up to all amounts due to it at any sale of the Property.

FURTHER ORDERED that there may be due to the AgStar Entities additional sums advanced by it under the terms of the AgStar Loan Documents to pay real estate taxes, insurance premiums, property protection, and attorneys' fees, which sums are to be determined by further Order, and paid as a "Second" priority as provided hereinabove.

FURTHER ORDERED that, upon the confirmation of any sale made herein, a minute entry of these proceedings shall be entered upon the County Records for Mercer County, Ohio to reflect that all interests are released as a lien against the Property, and that all parties to this action are perpetually barred from asserting any lien or rights upon the Property to the purchaser thereof, or anyone claiming under or through said purchaser, and subject to further order of this Court.

FURTHER ORDERED that, upon the confirmation of any sale made herein, that the Receiver or any Master Commissioner designated to sell the Property by the Court shall direct counsel for the AgStar Entities to prepare appropriate deed(s) for the sale of the Property to the successful bidder(s) according to Ohio Revised Code §2329.36. The Receiver or Master Commissioner shall sign the deed(s).

FURTHER ORDERED that, after said sale has been completed, the Receiver or any Master Commissioner shall convey to the purchaser said Property and that a Writ of Possession of said Property be issued.

FURTHER ORDERED RAM Separation Equipment Company, LLC is hereby dismissed as a party from this case.

FURTHER ORDERED Farm Credit Services of Mid-America, PCA is hereby dismissed as a party from this case.

    s/ *David A. Katz*
    DAVID A. KATZ
    U. S. DISTRICT JUDGE

# **EXHIBIT 1**

Situated in the Township of Hopewell, County of Mercer and State of Ohio (Township 5 South, Range 2 East):

And being part of the Northwest Quarter of Fractional Section 6 of said Hopewell Township, and being a parcel now or formerly owned by Linda Hawk (96-899) and being further described as follows:

Beginning at a P.K. nail found at the Southwest corner of said Northwest Quarter of Fractional Section 6;

1. Thence North 01 deg. 30' 18" East along the West line of said Northwest Quarter of Fractional Section 6 which is the centerline of Township Line Road (60 feet wide) which is the East line of parcels now or formerly owned by J. L. Sidenbender (331-172) and T. L. Sidenbender (215-159) which is the West line of said Linda Hawk parcel, a distance of 1496.15 feet to a P.K. nail set;

2. Thence South 88 deg. 39' 12" East along the South line of said T. L. Sidenbender parcel and a parcel now or formerly owned by H. B. and M. E. Bilter (214-11) which is the North line of said Linda Hawk parcel, a distance of 1849.47 feet (passing over a 5/8 inch bar set at a distance of 30.00 feet) to a 5/8 inch bar set;

3. Thence South 01 deg. 03' 08" West along the West line of a parcel now or formerly owned by F. E. Houts and R. H. Hawk (158-672) which is the East line of said Linda Hawk parcel, a distance of 1491.45 feet (passing over a 5/8 inch bar set at a distance of 1471.45 feet) to a P.K. nail set;

4. Thence North 88 deg. 47' 55" West (basis of bearings from Mercer County Local Coordinate Datum System) along the South line of said Northwest Quarter of Fractional Section 6 which is the centerline of Tama Road (40 feet wide) which is the North line of parcels now or formerly owned by M. Hawk (321-931) and J. A. King (37-185) which is the South line of said Linda Hawk parcel, a distance of 1861.28 feet to the place of beginning and containing 63.626 acres as surveyed by Ronald C. Hinton, S-6270 in February, 2004, and is shown on a Plat of Survey filed with the Mercer County Engineer.

Subject to the right of way of Tama Road and Township Line Road.

**3101 Tama Road**
**Rockford, Ohio**
**45882**

**PPN: 25-011000.0000**